UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Derivium Capital, LLC,<br><br>Debtor(s). | C/A No. 05-15042-JW<br><br>Adv. Pro. No. 06-80114-JW |
| Charles D. Cathcart,<br><br>Plaintiff(s),<br><br>v.<br><br>General Holding, Inc.; The People of The State of California; Newton Family LLC; WCN/GAN Partners Ltd.; Hammond 1994 Family, L.P.; United States of America and Mark W. Everson; Kevin Campbell, Chapter 7 Trustee for Derivium Capital, LLC,<br><br>Defendant(s). | Chapter 7<br><br>ORDER |

FILED
JUL 31 2006
United States Bankruptcy Court
Columbia, South Carolina

ENTERED
JUL 31 2006
B. R. M.

This matter comes before the court upon a Motion for Temporary Restraining Order ("Motion for TRO") filed by Charles Cathcart ("Cathcart") against the defendant, the People of the State of California ("State"). After considering the motion and the opposition thereto as well as the arguments at the hearing of this matter and the papers and pleadings submitted by the parties, the Court makes the following findings of fact and conclusions of law.[1]

## FINDINGS OF FACT

1.  The Motion for TRO seeks to stay several legal actions currently filed against

---

[1] To the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are also adopted as such.

Cathcart, who is a member of the debtor, Derivium Capital LLC ("Derivium").

2. The various legal actions against Cathcart include a civil action filed on September 25, 2002 in California Superior Court by the California Department of Corporations ("California Action") against Derivium, Cathcart and others for violations of the California Finance Lenders Licensing Laws ("CFL") and Securities Licensing Laws with regard to the stock loan business conducted by Derivium. A cause of action for violations of the California Securities Laws also alleged in the complaint was previously dismissed as to Cathcart pursuant to a motion for summary adjudication. The ruling on that motion is still subject to appeal. Nevertheless, other causes of action addressed by the California Action seek civil penalties and injunctive relief against Cathcart for violation of the CFL for engaging in unlicensed finance lender or broker activities with regard to Derivium's stock loan business.

3. Cathcart asserts that the actions currently filed against him, including the California Action, are subject to an automatic stay as a result of Derivium's bankruptcy filing because Derivium's automatic stay may be extended to him because (1) civil penalties assessed against Cathcart will directly affect the administration of Derivium's bankruptcy since Derivium is allegedly required to indemnify Cathcart for such liability, (2) Cathcart is being sued at least in part as the alter ego of Derivium, and (3) the claims asserted against him are property of Derivium's bankruptcy estate.

4. The California Action against Cathcart is currently set for trial on August 14, 2006.

5. The State and the Chapter 7 Trustee reached a settlement of the claims in the California Action that was approved by this Court after notice to creditors and hearing.

6. As part of the settlement, the Chapter 7 Trustee stipulated to a $750,000 judgment

2

against the Derivium estate for civil penalties for violation of the CFL and a permanent injunction not to engage in the finance lending or brokering business without first obtaining a license.

7.     Furthermore, the State agreed to subordinate its judgment against Derivium to the claims of the other creditors, and that any money it is able to collect in satisfaction of any judgment obtained against Cathcart will be held in trust by the Chapter 7 Trustee pending the resolution of any claims filed against Cathcart by the estate. The State and the Chapter 7 Trustee also agreed that any judgment obtained by the estate against Cathcart would have priority over any judgment obtained by the State.

8.     At the hearing on the Motion for TRO, the Chapter 7 Trustee, through his counsel, indicated that he does not believe that allowing the California Action to proceed against Cathcart will have any adverse effect on the estate or its creditors.

9.     The Chapter 7 Trustee further noted that he did not support the issuance of a temporary restraining order as to the California Action against Cathcart. The Chapter 7 Trustee also represented that allowing the California Action to proceed to judgment against Cathcart may benefit the estate by helping to locate and recover assets from Cathcart pursuant to any judgment obtained by the State, which pursuant to the settlement, the Trustee would then hold in trust and could use to satisfy any judgment it may later obtain against Cathcart.

10.    None of the counsel representing any of the other Derivium creditors that are defendants in this adversary proceeding believed that allowing the California Action to proceed would prejudice their interests. Furthermore, none of the creditors supported the issuance of a temporary restraining order that would enjoin the California Action against

3

Cathcart.

11.   The State provided a state court order from the California Action. The state court order denied Cathcart's motion for summary judgment because the state court had determined that the civil penalties authorized under the CFL for engaging in unlicensed lender activities were applicable to Cathcart personally, even though he engaged in the unlicensed conduct as an agent or employee of an unlicensed corporation Derivium. Thus, according to the record of the California Action, Cathcart's liability for civil penalties under the CFL is not based on his status as the alter ego of Derivium but is a penalty to which he is personally liable under the CFL's statutory scheme.

## CONCLUSIONS OF LAW

In order to determine whether to issue a temporary restraining order, the Court must examine the following four factors: (1) the likelihood of irreparable harm to the plaintiff if an injunction is denied, (2) the likelihood of harm to the defendant if the an injunction is granted, (3) the likelihood that plaintiff will succeed on the merits, and (4) the public interest. Safety Kleen, Inc. (Pinewood) v. Wyche, et al., 274 F.3d 846, 858-59 (4th Cir. 2001). In the Fourth Circuit, a balance-of-hardships analysis is applied when considering the factors. See Chicago Title Insurance, Co. v. Resolution Trust Corp., 868 F. Supp. 135, 140 (D.S.C. 1994) (noting the Fourth Circuit established the standard for interlocutory injunctive relief in Blackwelder Furniture Co. of Statesville, Inc. v. Selig Mfg. Co., Inc., 550 F.2d 189 (4th Cir. 1977)).

Under the balance-of-hardship analysis,[2] the likelihood of irreparable harm is the

---

[2]   Though not specifically overruled by the Fourth Circuit, application of the balance-of-hardship analysis prescribed in Blackwelder has been criticized. See Safety Kleen, Inc., 274 F.3d at 868-69 (Luttig & Widener, J.J., concurring but noting concerns with the balance-of-hardship analysis). Despite concerns over

4

first factor for this Court to consider. Safety Kleen, Inc., 274 F.3d at 859. Thereafter, the Court must balance the hardships to the parties to determine the degree by which a demonstration of a "likelihood of success on the merits" must be made. See id. If the balance-of-harms tips decidedly in favor of the party seeking an injunction, an injunction will be granted if the party seeking the injunction can raise questions going to the merits so serious, substantial, difficult and doubtful, as to make then fair ground for litigation. Id. Under the circumstances of this case, Carthcart has not demonstrated a likelihood of irreparable harm which would tip the balance-of-hardship decidedly in his favor. Furthermore, this Court has not observed any facts, legal authority, or other circumstances indicating that Cathcart is likely to succeed on the merits or, at a minimum, can present a question so serious, substantial, difficult and doubtful, as to make it fair ground for litigation.

### I. THE BALANCE-OF-HARDSHIPS

Under the circumstances of this case, Cathcart has not demonstrated any irreparable harm caused by being required to defend the California Action. For the most part, Cathcart primarily points to the effects that the California Action will have on the administration of Derivium's bankruptcy estate, in light of Cathcart's asserted indemnification rights against Derivium, as grounds for demonstrating irreparable harm. Though Cathcart points to alleged irreparable harm to Derivium's bankruptcy estate, Cathcart has not clearly articulated how the California Action will cause irreparable harm to him personally.

At its worst, the California Action will require Cathcart to litigate his interests and defend against the claims raised by the California Action. Though being required to

---

the balance-of-hardship analysis, this Court must apply such a test in the absence of Fourth Circuit authority indicating otherwise.

5

defend against legal claims may give rise to certain burdens, the burdens associated with going to trial do not give rise to irreparable harm. At this point in time, this Court cannot conclude that allowing the California Action to proceed will cause Cathcart irreparable harm because Cathcart will be provided with due process and will have the opportunity to protect his interests by litigating the California Action at trial. Furthermore, given the possibility that Cathcart may prevail on the merits, allowing the California Action to go forward would not give rise to any irreparable harm to Cathcart personally.

Thus, the Court is left to address whether the alleged likelihood of irreparable harm caused by allowing the California Action to proceed provides sufficient grounds for granting Cathcart a temporary restraining order. The Court concludes that it does not.

Given the settlement agreement between the State and the Chapter 7 Trustee, there is no apparent harm to the estate of Derivium or the creditors in allowing the California Action proceed to trial. In fact, collection of any judgment by the State against Cathcart may be a benefit to the estate under the settlement agreement because any judgment amount collected by the State shall be given to the Chapter 7 Trustee and held in escrow by him because the judgment amount is subject to and subordinate to any interests in the judgment that Derivium's bankruptcy estate may establish and assert.

Even under a balance-of-hardships, the harm to the State in delaying the California Action clearly outweighs any of the perceived harms cited by Cathcart. The California Action has been proceeding for almost four years and is currently set for trial in state court on August 14, 2006. Issuing a temporary restraining order and staying the California Action will further delay the trial and resolution of the California Action against Cathcart. Delaying the State's ability to seek injunctive relief and pursue civil penalties against

6

Cathcart to prevent further violations of the CFL and protect the public would significantly obstruct the State from enforcing the requirements prescribed by the Statutes of California. Such harm, under the circumstances of this case, clearly outweighs the harm that Cathcart would suffer by going to trial on the California Action. Therefore, in light of the record of this case, the Court concludes that Cathcart has failed to demonstrate a likelihood of irreparable harm to himself as the party seeking injunctive relief, and that the balance-of-hardships in this instance weighs in favor of the State.

## II.    THE LIKELIHOOD OF SUCCESS ON THE MERITS

The Motion for TRO and Cathcart's adversary complaint is based on Cathcart's belief that the automatic stay provided by 11 U.S.C. § 362(a) stays the California Action as to both the Derivium and Cathcart. Pursuant to A.H. Robins Company, Inc., v. Piccinin, 788 F.2d 999 (4th Cir. 1986), Cathcart contends that the automatic stay protecting Derivium applies to him because (i) Derivium is obligated to indemnify Cathcart for the California Action and (ii) the State has pursued the California Action against Cathcart under the theory that he is the alter ego of Derivium. Furthermore, Cathcart contends the California Action should also be barred because the State's claims for civil penalties are property of the estate and therefore subject to stay under 11 U.S.C. §362(a) (3) and this Court's equitable authority under 11 U.S.C. § 105(a).

The State contends that the California Action against Cathcart is a governmental law enforcement and regulatory action, and is therefore specifically exempted from the automatic bankruptcy stay by 11 U.S.C. § 362(b)(4). Furthermore, because the CFL only provides the State with the authority to pursue claims for civil penalties against Cathcart for violation of the CFL, the State concludes that the California Action is not property of

7

Derivium's bankruptcy estate. The State also notes that pursuant to the settlement with the Chapter 7 Trustee, any money collected by the State through a judgment against Cathcart will be held in trust by the Chapter 7 Trustee pending the resolution of any claims the estate may bring against Cathcart.

Based on the evidence submitted, Cathcart has not established a likelihood of prevailing on the merits. In order to determine whether the exception to the stay under 11 U.S.C. § 362(b)(4) applies to the State's prosecution of the California Action, the Court must determine whether the purpose of the CFL is to "promote public safety and welfare" or to "effectuate public policy." Safety Kleen, Inc., 274 F.3d at 865 (internal citations omitted). If the purpose of the CFL, however, is related to "the protection of the government's pecuniary interests in the debtor's property" or to "adjudicate private rights," then 11 U.S.C. § 362(b)(4) is inapplicable. Id. (internal citations omitted). Although certain state laws have the dual purpose of promoting public welfare and protecting the state's pecuniary interests, "[t]he fact that one purpose of the law is to protect the state's pecuniary interest does not necessarily mean that [11 U.S.C. § 362(b)(4)] is inapplicable." Id. Furthermore, the fact that a given state action requires an expenditure does not mean that 11 U.S.C. § 362(b)(4) is inapplicable. See id. (noting that state action requiring an expenditure by a debtor does not obviate the application of 11 U.S.C. § 362(b)(4)). Accordingly, the Court must focus its analysis on the "primary purpose of the law that the state is attempting to enforce." Id.

After reviewing the complaint that the State filed in the California Action, the Court concludes that the California Action is a governmental law enforcement and regulatory action exempted from the automatic stay pursuant to 11 U.S.C. § 362(b)(4). In

8

Safety Kleen, the Fourth Circuit noted that when determining whether the regulatory exception applies in the context of environmental laws, "courts often focus on whether deterrence is the primary purpose of the law." Id. In light of the provisions and purpose of the CFL sections at issue, the Court finds no reason to depart from such an inquiry. Pursuant to the provisions of the CFL or more specifically Cal. Finance Lenders Law Code §§ 22100 & 22713 (West, Westlaw through Ch.68 of 2006 Reg. Sess. urgency legislation and Props. 81, 82 and 1A), the California Action seeks injunctive relief against Cathcart to prevent him from personally undertaking further unlicensed lending which could injure the public.[3]

The CFL specifically provides that only the State may pursue relief under its provisions. See Cal. Finance Lenders Law Code §§ 22713(a) & (c) (specifically vesting the authority to pursue injunctive relief and civil penalties in the commissioner and the Attorney General, who is to act in the name of "the people of the State of California"). The injunctive relief and civil penalties provided by Cal. Finance Lenders Law Code §22713 appear designed to deter Cathcart and others from failing to comply with the mandates. Given that purpose of the Cal. Finance Lenders Law Code § 22713 is to deter non-compliance with the licensing provisions of Cal. Finance Lenders Law Code § 22100, this Court concludes that the California Action is subject to the regulatory exemption provided by 11 U.S.C. § 362(b)(4).

Cathcart also contends that Court may stay the California Action pursuant to the equitable authority provided to the Court under 11 U.S.C. § 105(a). The terms of § 105(a), however, limits the extent of this Court's equitable authority by expressly providing that

---

[3] The Court notes, however, that Cathcart said he would consent to the injunctive relief pursued by the State.

"the court may issue any order, process, or judgment *that is necessary to carry out* the provisions of this title." 11 U.S.C. § 105(a) (emphasis added). In this case, Cathcart is asserting that the Court should use its authority under 11 U.S.C. § 105 to prevent the State from pursing the California Action against Cathcart. Use of the Court authority under § 105(a) according to Cathcart's Motion for TRO, however, would undermine the regulatory exception provided by 11 U.S.C. § 362(b)(4). Under the circumstances, it is clear that using the Court's powers under 11 U.S.C. § 105 to stay an action, which is exempted from the automatic stay, is not a means to "carry out the provisions" of the Bankruptcy Code pursuant to the plain language of 11 U.S.C. § 105(a). See Raleigh v. Illinois Dept. of Revenue, 530 U.S. 15 (2000) ("Bankruptcy courts are not authorized in the name of equity to make wholesale substitution of underlying law controlling the validity of creditors' entitlements, but are limited to what the Bankruptcy Code itself provides."); Norwest Bank Worthington, et al. v. Ahlers, 485 U.S. 197, 206 (1988) ("[w]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."); Gouveia v. Tazbir, 37 F.3d 295 (7th Cir. 1994) ("The Supreme Court has taught that any grant of authority given to the bankruptcy courts under § 105 must be exercised within the confines of the bankruptcy code."). Accordingly, the Court concludes that Cathcart cannot demonstrate the likelihood that this Court would be compelled to stay the California Action pursuant to 11 U.S.C. § 105(a).

The Court also notes that because the authority to pursue relief under Cal. Finance Lenders Law Code § 22713 is only vested in the State and in light of the State's settlement with the Chapter 7 Trustee, the Court cannot conclude that the California Action is

10

property of Derivium's bankruptcy estate.[4] Furthermore, there are critical differences between the circumstances of this case and the circumstance in A.H. Robins Company, Inc., v. Piccinin. First, the Court notes that A.H. Robins Company, Inc., v. Piccinin dealt with an adversary proceeding associated with the Chapter 11 reorganization of an ongoing and fully operational corporate entity. Derivium's bankruptcy, however, involves a Chapter 7 liquidation where the business entity at issue is no longer operating and the Chapter 7 Trustee is actively searching for assets to administer. Second, the officers being sued in the A.H. Robins case were continuing the management of the debtor-company and were subject to an overwhelming amount of litigation that detracted from their efforts to reorganize. In this case, however, the administration of Derivium's bankruptcy case is largely the responsibility of the Chapter 7 Trustee, and Cathcart is no longer involved in the business of Derivium.

Therefore, under the circumstances of this case, the Court concludes that Cathcart has not demonstrated that it is likely he will succeed on the merits, and the Court can find no substantial questions at issue to consider.

### III. PUBLIC INTEREST

The CFL appears to be a statutory scheme designed to regulate the lending industry in order to protect the public from unscrupulous and fraudulent lending practices. Accordingly, enforcement of the regulatory scheme devised by the CFL is in the public interest. In this case the California Action is a typical enforcement process prescribed by the CFL. Therefore, given the purpose of the CFL and the California Action, the Court concludes that the public interest weighs against granting Cathcart's Motion for TRO.

---

[4] The Court also notes that the Chapter 7 Trustee has not asserted any right to assert the enforcement authority provided to the State under Cal. Finance Lenders Law Code § 22713.

11

## IV.    CONCLUSION

In light of the record developed herein, Cathcart has failed to carry his burden of proof. Therefore, the Motion for TRO as to the California Action is denied.[5]

**AND IT IS SO ORDERED.**

_____
UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina
July 31, 2006

---

[5] Through the Motion for TRO, Cathcart also sought to enjoin the prosecution of certain causes of action being pursued by General Holding, Inc.; Newton Family LLC; WCN/GAN Partners Ltd.; and Hammond 1994 Family, L.P. (collectively, the "Creditor-Defendants"). However, because the causes of action pursued by the Creditor-Defendants do not appear subject to the provisions of 11 U.S.C. § 362(b)(4), the Court shall address the Creditor-Defendants' objections to the Motion for TRO by a separate order.

12