**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re,<br><br>Derivium Capital, LLC,<br><br>Debtor(s). | C/A No. 05-15042-JW<br><br>Adv. Pro. No. 06-80114-JW<br><br>Chapter 7 |
| Charles D. Cathcart,<br><br>Plaintiff(s),<br><br>v.<br><br>General Holding, Inc.; The People Of The State Of California; Newton Family LLC; WCN/GAN Partners Ltd.; Hammond 1994 Family, L.P.; United States Of America and Mark W. Everson; and Kevin Campbell, Chapter 7 Trustee for Derivium Capital, LLC,<br><br>Defendant(s). | ORDER |

*FILED AUG 17 2006 United States Bankruptcy Court Columbia, South Carolina*

*ENTERED AUG 18 2006 B. R. M.*

This matter comes before the Court upon a Motion for Temporary Restraining Order ("Motion for TRO") filed by Charles D. Cathcart ("Cathcart"). In the Motion for TRO, Cathcart seeks to enjoin General Holding, Inc.; Newton Family LLC; WCN/GAN Partners Ltd.; and Hammond 1994 Family, L.P. (collectively, the "Defendant-Creditors") from pursuing a number of causes of action asserted against Cathcart in various forums. All of the various causes of action, which Defendant-Creditors assert against Cathcart, concern Cathcart's involvement with a "90% Stock Loan Program" provided by Derivium Capital, LLC ("Debtor"). Accordingly, based upon the submissions provided by the parties and the arguments they presented at the hearing on Cathcart's Motion for TRO, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1.  On June 9, 2006, Cathcart filed a complaint against the Defendant-Creditors, the People of the State of California (the "State"), and the Internal Revenue Service ("IRS") and its commissioner, Mark W. Everson.

2.  In the Motion for TRO, Cathcart sought to enjoin the Defendant-Creditors, the State, and the IRS from pursuing various causes of action against him during the course of Debtor's bankruptcy.[1]

3.  The various causes of action asserted by the Defendant-Creditors against Cathcart concern Cathcart's status as a member and owner of Debtor and his involvement with Debtor's "90% Stock Loan" program.[2] Furthermore, the Defendant-Creditors' causes of action are currently being pursued in the United States District Court for the District of South Carolina and the United States District Court for the District of Wyoming.

4.  Each of the Defendant-Creditors and the Chapter 7 Trustee filed an objection to the Motion for TRO.

5.  The Court conducted a hearing on Cathcart's Motion for TRO on July 18, 2006.

6.  The Chapter 7 Trustee argues that Cathcart's Motion for TRO may jeopardize the interest of the estate and the interests of certain creditors because granting a temporary restraining order pursuant to Cathcart's Motion for TRO may cause the forfeiture of certain

---

[1] The Court has entered a separate order concerning the Motion for TRO as it relates to the State. Cathcart dismissed the IRS and its commissioner without prejudice by Notice of Dismissal.

[2] In the Complaint filed by Cathcart, Cathcart describes the "90% Stock Loan Program" as a:

> ...[L]oan transaction whereby the borrower pledges certain approved stock to secure a loan valued at 90% of the market value of the stock. The 90% Stock Loan would typically mature after three years with interest accruing at 10%-12% per annum. At the maturity of the loan the borrower would have the option of paying off the loan plus interest accrued and receiving back the same number of shares of stock pledged, or (in the event that value of the stock was less than the loan principal plus interests) it could walk away from the transaction without any further obligation....

2

rights that may be only asserted by the Defendant-Creditors and which may be time sensitive. Furthermore, the Chapter 7 Trustee noted that a temporary restraining order or injunction of the Defendant-Creditors' pursuit of their causes of action would impede the efforts of the Chapter 7 Trustee and the Defendant-Creditors' to coordinate the various actions asserted against Cathcart or other individuals related to Debtor into one litigation forum.

7.  During the course of the hearing on the Motion for TRO, the Chapter 7 Trustee and Defendant-Creditors agreed to a limited order in which the Defendant-Creditors would be stayed from proceeding to trial or judgment with their ongoing causes of action, but have the ability to pursue their causes of action or assert other causes of action to preserve their rights. The Chapter 7 Trustee asserts that such arguments would be the most effective means to protect the estate, and protect the rights of the Defendant-Creditors.

8.  Cathcart, however, contended that fully enjoining the Defendant-Creditors from pursuing their causes of action against Cathcart is the only viable means to protect the interests of the bankruptcy estate and his interests.

## CONCLUSIONS OF LAW

To determine whether to issue a temporary retraining order, the Court must examine the following four factors: (1) the likelihood of irreparable harm to the plaintiff if an injunction is denied, (2) the likelihood of harm to the defendant if the an injunction is granted, (3) the likelihood that plaintiff will succeed on the merits, and (4) the public interest. Safety Kleen, Inc. (Pinewood) v. Wyche, et al., 274 F.3d 846, 858-59 (4th Cir. 2001). When considering the factors, courts in the Fourth Circuit apply a balance-of-hardships analysis. See Chicago Title Insurance, Co. v. Resolution Trust Corp., 868 F.

Supp. 135, 140 (D.S.C. 1994) (noting the Fourth Circuit established the standard for interlocutory injunctive relief in <u>Blackwelder Furniture Co. of Statesville, Inc. v. Selig Mfg. Co., Inc.</u>, 550 F.2d 189 (4th Cir. 1977)). The first factor for the Court to consider under the balance-of-hardship analysis[3] is the likelihood of irreparable harm to the party seeking the injunctive relief. <u>Safety Kleen, Inc.</u>, 274 F.3d at 859. Thereafter, the Court must balance the hardships to the parties to determine the degree by which a demonstration of a "likelihood of success on the merits" must be made. <u>See id.</u> If the balance-of-harms weighs decidedly in favor of the party seeking an injunction, an injunction will be granted if the party seeking the injunction can raise questions going to the merits so serious, substantial, difficult and doubtful, as to **make them fair ground for litigation.** <u>Id.</u>

Under the circumstances of this case, Carthcart has not demonstrated a likelihood of irreparable harm which would tip the balance-of-hardship decidedly in his favor. Furthermore, the record developed in this case thus far does not demonstrate facts, legal authority, or other circumstances indicating that Cathcart is likely to succeed on the merits or, at a minimum, present a question so serious, substantial, difficult and doubtful, as to make it fair ground for litigation.

### I. Balance-of-Hardships Analysis – Likelihood of Irreparable Harm to Cathcart in the Absence of a Stay and Likelihood of Damages to Defendant-Creditors if Stay is Granted

Under the circumstances, Cathcart has not demonstrated that he will suffer irreparable harm if the Motion for TRO is not granted. While Cathcart may be inconvenienced in litigating with the Defendant-Creditors in various forums, this is mitigated to an extent because the Defendant-Creditors expressed a willingness to litigate

---

[3] The Court, however, notes that the balance-of-hardship analysis prescribed in <u>Blackwelder</u> has been criticized. <u>See</u> <u>Safety Kleen, Inc.</u>, 274 F.3d. at 868-69 (Luttig & Widener, J.J., noting concerns with the balance-of-hardship analysis).

4

their various actions against Cathcart in one forum. Furthermore, Cathcart will have the ability to assert his rights during the course of the ongoing litigation with the Defendant-Creditors. On the other hand, granting Cathcart's Motion for TRO would severely prejudice the Defendant-Creditors because certain claims or causes of action may be barred by the passage of time (e.g. the running of statutes of limitation) and there has been significant delay to this point in time. Under such circumstances, the balance-of-hardships weigh in favor of the Defendant-Creditors.

Although Cathcart expresses concerns over the Defendant-Creditors' prosecution of their claims because such claims may be property of the estate, the Chapter 7 Trustee, who has the primary responsibility of preserving and administering Debtor's bankruptcy estate, does not support granting Cathcart's Motion for TRO. In this case, the Chapter 7 Trustee is more concerned with providing the Defendant-Creditors with the opportunity to preserve and coherently set forth their claims against Cathcart and other entities affiliated with either Cathcart or Debtor and determining the ideal forum to efficiently adjudicate all such claims. According to the Chapter 7 Trustee, the Defendant-Creditors willingness to stay the prosecution of their causes of action from reaching trial and judgment for a period of sixty days provides a sufficient opportunity for all parties to determine their positions relative to the various causes of action and the estate's interest therein. The Defendant-Creditors also argue that they should not be prohibited from asserting additional claims against Cathcart or entities related to Debtor and Cathcart to preserve their rights and through continued pre-trial filings and discovery during the proposed sixty-day stay period. The Court is persuaded that such a consensual interim stay under the conditions prescribed will be more beneficial to the estate. Accordingly, the Court concludes that the absence of

a temporary restraining order will not result in irreparable harm to the bankruptcy estate or Cathcart.

Cathcart also asserts that granting his Motion for TRO will benefit the estate because it will prevent the Debtor from incurring sizable liability under a member/manager indemnification provision incorporated into Debtor's operating agreement. The Chapter 7 Trustee disputes Cathcart's indemnification rights including the priority of any repayment. Additionally the agreement between the Chapter 7 Trustee and the Defendant-Creditors reduces the risk of the estate incurring a significant indemnification claims at the present time. Accordingly, the Court can find no irreparable harm with respect to Cathcart's alleged indemnification rights.

Nevertheless, if the circumstances of this case change and the Chapter 7 Trustee believes that allowing the Defendant-Creditors to pursue their claims against Cathcart can irreparably harm the estate, then the Chapter 7 Trustee or Debtor may seek injunctive relief to protect the interests of the estate. Given the apparent willingness of the Defendant-Creditors to work with the Chapter 7 Trustee to create a more coordinated effort to pursue claims against Cathcart or other individuals for the benefit of the estate, the temporary restraining order sought by Cathcart appears unnecessary at this time.

### II. Likelihood of Success on the Merits

Cathcart contends that pursuant to A.H. Robins Company, Inc. v. Piccinin, 788 F.2d 994 (4th Cir. 1986), he is likely to succeed with procuring the protections of Debtor's automatic stay for his benefit. There are, however, critical factual differences between the Piccinin case and this case which undermine the likelihood of Cathcart's ability to obtain the protections of Debtor's automatic stay. First, the debtor in Piccinin was undergoing a

Chapter 11 reorganization; whereas, in this case, Debtor is subject to a Chapter 7 liquidation. This is a critical distinction because, in affirming the district court's issuance of a preliminary injunction enjoining various suits against the debtor's officers and liability insurance policy, the Fourth Circuit noted that "[i]t seems incontestable that, if the suits are permitted to continue and discovery allowed, any effort at reorganization will be frustrated, if not permanently thwarted." Id. at 1008. Under the circumstances of this case, however, the Defendant-Creditors pursuit of their various causes of action do not presently appear to impede the administration of this Chapter 7 case. Moreover, the ongoing discovery associated with the litigation directed against Cathcart appears to be an effective means for the Chapter 7 Trustee to further his investigation of the extent of Debtor's assets and Cathcart's involvement in managing such assets.

In Piccinin, the various parties pursuing litigation against the debtor, its officers and directors, and its insurance liability policy would have resulted in binding judgments against the debtor and the debtor's insurance policy, which not only triggered liability coverage for debtor, but also triggered indemnification to the debtor's officers. Id. In this case, however, the Chapter 7 Trustee has procured the Defendant-Creditors' consent to limit their pursuit of their pending actions against Cathcart from reaching a trial or judgment. Under their agreement with the Chapter 7 Trustee, further actions taken by the Defendant-Creditors would only be pursued if necessary to preserve rights or further discovery, two results that do not give rise to the risk of the inconsistent judgments attendant in the Piccinin case.

Accordingly, Cathcart has not demonstrated that he is likely to succeed on the merits of his attempt to have Debtor's automatic stay expanded to protect him from the

7

causes of action asserted by the Defendant-Creditors.

### III. Public Policy

In light of the record developed, denying the Motion for TRO filed by Cathcart best serves the public interest because at this point in Debtor's bankruptcy and this adversary proceeding, a blanket injunction as to the causes of action asserted by the Defendant-Creditors would not appear to benefit the estate. The Chapter 7 Trustee is in ongoing negotiations with the Defendant-Creditors and their agreement to a limited prosecution of their claims against Cathcart will enable the Chapter 7 Trustee to better assess his interests in the Defendant-Creditors' ongoing legal proceedings without causing the forfeiture of any creditor rights. Furthermore, because this case does not involve an ongoing reorganization and to the extent that allowing the Defendant-Creditors to pursue their claims on a limited basis may yield important information necessary to the administration of the Debtor's bankruptcy estate, the Court concludes that it is in the public interest to let the Defendant-Creditors pursue their causes of action against Cathcart under the restrictions that they have agreed to with the Chapter 7 Trustee.

### IV. Conclusion

Accordingly, in light of findings and conclusions made herein, Cathcart's Motion for TRO is denied, and the Court shall enter the consent agreement of the Chapter 7 Trustee and the Defendant-Creditors by a separate order.

**AND IT IS SO ORDERED.**

_____
UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina
August 17, 2006